**CAPERS v. ARKANSAS NATURAL GAS CORPORATION et al.**

**No. 5951.**

Court of Appeal of Louisiana. Second Circuit.

Feb. 7, 1940.

Rehearing Denied March 6, 1940.

Writ of Certiorari and Review Denied April 29, 1940.

I. Abramson, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff sues to recover workmen's compensation on the basis of permanent total disability. His demand was rejected below and he appealed.

He alleges that on March 13, 1938, while assisting several other workmen in moving a heavy cabinet safe of his employer, the Arkansas Natural Gas Company, from one room to another in the Slattery Building, he sustained a double inguinal hernia as a result of the heavy lifting and straining necessary to move the safe. He impleaded his employer and the carrier of its workmen's compensation insurance.

Defendants deny that plaintiff was injured while discharging the duties of his employment. This is the only controverted issue tendered.

The safe in question is seventy (70) inches high, forty (40) inches wide and thirty (30) inches deep. It weighs 1,595 pounds and rests upon four steel rollers. It is easily moved about when all the rollers are in place. Prior to the time of the alleged injury one of the front rollers was broken. This allowed that corner of the safe to tilt downward when being moved.

The safe was moved on the occasion mentioned, by six of the gas company's janitors, including plaintiff. It was stationed beside the door of the office and had to be shoved a few feet in front of the door, the narrow side facing it, in order to be moved into the corridor. All of these janitors, save plaintiff, testified for defendants. There is a mass of contradictions in the testimony of all of them, including plaintiff, anent the details of the safe's removal. A board, 1 x 12 x 18 inches, played a part in the removal. Portions of the testimony indicate that this board was placed on the floor under the broken roller to prevent the safe from tilting and to render easier it being shoved toward the door.

Plaintiff says that he and another of the helpers employed the board as a pry under the distal end of the safe to shove it over the one-inch carpet strip in the door, and that while thus engaged, the hernias developed suddenly; that it felt "like something tore loose." The helper contradicts plaintiff flatly about using the board to lift and shove the safe forward and says he was not on plaintiff's side of the safe at all. The other helpers are positive that plaintiff did no heavy lifting or straining. He made no outcry indicative of pain, nor did he tell any of his companions that he was hurt or had any unusual sensations about the inguinal regions.

The preponderance of the testimony sustains the contention that after the safe had been shoved sidewise to the carpet strip, a small two-wheel hand truck was run under the side nearest the door, and with part of the weight resting upon the truck and the balance on the two rear rollers, the safe was carried to the other office. It required little physical effort to do this.

Plaintiff testified that the safe was removed about four o'clock P. M. and that during that same afternoon he went to the office of Dr. Wren in the Slattery Building for an examination. Dr. Wren was unable to serve him then and referred him to Dr. Bush. Physical examination disclosed left and right inguinal hernias, the former being the more pronounced. Dr. Bush recalled, when the examination was made, that plaintiff informed him the injury occurred the day prior. He says the examination was made the latter part of March. Plaintiff says he was hurt on March 18th.

Plaintiff also testified that on account of pain and suffering, he did not return to work the two days following the removal of the safe. He is in error as to this. Time sheets, signed by him, refute his testimony. These sheets show that he worked continuously from March 16th to May 14th, the day he was discharged for inefficiency. Not until this suit was filed or threatened, did the employer or any of plaintiff's daily colaborers have any intimation that he was suffering from hernia.

Plaintiff did sustain a left inguinal hernia in the year 1931. Dr. Bush successfully operated therefor in 1935. At that time the right side was not involved to any extent.

It is shown and well known that hernias may be produced from many causes. Straining and heavy lifting are common causes, but severe coughing, sudden falls and any violent physical action or strenuous movement of the muscles of the abdomen also, sometimes, bring about conditions terminating in hernia.

It is impossible to determine the age of a hernia from physical examination. When one suddenly arises, almost invariably it is accompanied by intense pain and considerable discomfort. It is unusual for a person who suddenly sustains a hernia to not make an outcry at the time, or otherwise acquaint those about him of the fact.

When plaintiff began to work for the gas company some two years before the alleged accident, apparently, at least, he had no symptoms indicative of a recurrence of the hernia for which he had undergone an operation. We do not know the cause of the recurrence nor why the other side became involved. The testimony in the case fails to establish that the conditions now affecting plaintiff have any causal connection with his employment.

The judgment appealed from is correct. It is affirmed.